UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERESA A. LONG,

      Plaintiff,                          CIVIL ACTION NO. 09-14227

      v.                                 DISTRICT JUDGE SEAN F. COX

COMMISSIONER OF                    MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

      Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

**I.    PROCEDURAL HISTORY**

    *A.    Proceedings in this Court*

On October 28, 2009, Plaintiff filed the instant suit seeking judicial review of the Commissioner's decision disallowing benefits (Dkt. No. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), this matter was referred to the undersigned for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of Social Security Disability Insurance and Supplemental Security Income benefits (Dkt. No. 2). This matter is currently before the Court on cross-motions for summary judgment (Dkt. Nos. 11, 16).

    *B.    Administrative Proceedings*

Plaintiff filed the instant claims on May 8, 2006, alleging that she became unable to work on June 6, 2005 (Tr. 88, 93). The claim was initially disapproved by the Commissioner on September 6, 2006 (Tr. 45-49, 50-53). Plaintiff requested a hearing and, on September 18, 2008, Plaintiff appeared with counsel before Administrative Law Judge (ALJ) Paul R. Armstrong, who considered the case *de novo*. In a decision dated January 20, 2009, the ALJ found that Plaintiff was not disabled

(Tr. 10-18). Plaintiff requested a review of this decision on February 5, 2009 (Tr. 4-6). The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on August 28, 2009, denied Plaintiff's request for review (Tr. 4-6).

In light of the entire record in this case, I find that the Commissioner's final determination contains errors of law. Accordingly, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **GRANTED**, Defendant's motion for summary judgment be **DENIED**, and that this matter be **REMANDED** for a new hearing consistent with the discussion below.

## II.	STATEMENT OF FACTS

### *A.	ALJ Findings*

Plaintiff was 48 years old at the time of the most recent administrative hearing (Tr. 16). Plaintiff has past relevant work as a waitress (Tr. 16). The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since June 6, 2005 (Tr. 12). At step two, the ALJ found that Plaintiff had the "severe" impairment of bipolar disorder. *Id*. At step three, the ALJ found no evidence that Plaintiff's impairment met or equaled one of the listings in the regulations (Tr. 13). The ALJ also found that Plaintiff has "moderate" difficulties with regard to concentration, persistence and pace. Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity (RFC) to perform "a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff] is limited to simple unskilled work that involves no more than superficial contact with supervisors, co-workers, or the general public" (Tr. 14). At step four, the ALJ found that Plaintiff could not perform her previous work as a waitress (Tr. 16). At step five, the ALJ denied Plaintiff benefits, as the ALJ found that Plaintiff could perform a significant number of jobs

available in the national economy, such as hand packager (25,720 jobs state-wide) and folding machine operator (6,430 jobs state-wide) (Tr. 17).

### B. *Administrative Record*

#### 1. **Plaintiff's Testimony and Statements**

Plaintiff testified that she could not work in a factory because her anxiety affected her ability to get orders right and to meet with people (Tr. 27). She testified that she had trouble concentrating and memorizing (Tr. 28). Plaintiff testified that she would be willing to try working as a cleaner, but only when people were not around (Tr. 30). Plaintiff testified that she gardened with her neighbor in the summer, was getting out and mingling, and went bowling with others (Tr. 25-26). Plaintiff also testified that she lived with one of her sons and that he helped her (Tr. 25, 32-33).

#### 2. **Medical Evidence**

On August 3, 2005, Plaintiff sought treatment for a bipolar disorder at New Passages Behavioral Health & Rehabilitation Services (Tr. 147-54). On exam, Plaintiff was oriented and cooperative (Tr. 149-50). Plaintiff's affect was sad, anxious, angry and tearful, and her mood was depressed and irritable (Tr. 149). Her speech was soft and her thought process was intact (Tr. 149). Plaintiff denied hallucinations and delusions (Tr. 150). Plaintiff was assigned a Global Assessment of Functioning (GAF) Score[1] of 60 (Tr. 153). Plaintiff was referred for a psychiatric consultation (Tr. 154), wherein she was assigned a GAF score of 45 (Tr. 211-15). She received treatment,

---

[1] The GAF score is "a subjective determination that represents the clinician's judgment of the individual's overall level of functioning. It ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). A GAF score of 31-40 indicates some impairment in reality testing or communication (*e.g.*, speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood. A GAF of 41 to 50 means that the patient has serious symptoms . . . OR any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job). A GAF rating of 51 to 60 signals the existence of moderate difficulty in social or occupational functioning." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009).

consisting of therapy sessions (Tr. 165-70) and prescription medication (Tr. 171, 189, 202, 207) through 2005 and the following two years (Tr. 220-32, 259-303).

On August 23, 2006, Dr. G. Forrer performed a consultative psychological examination at the request of the state Disability Determination Service (DDS) (Tr. 235-38). Upon examination, Plaintiff's overall mood was mildly depressed (Tr. 237). Plaintiff was well oriented and she displayed no confusion, clouding of consciousness or hallucinations (Tr. 237). She was cooperative and displayed no evasiveness, suspiciousness, guardedness, or manipulativeness (Tr. 237). She completed portions of the examination well (Tr. 237-38). Dr. Forrer diagnosed anxiety and personality disorders and assessed that she had an adequate level of psychological functioning (Tr. 238).

On September 6, 2006, Dr. B. Pinaire reviewed Plaintiff's records on behalf of the state DDS (Tr. 239-56). Dr. Pinaire opined that Plaintiff had mild limitations in activities of daily living, moderate limitations in maintaining social functioning, moderate limitations in maintaining concentration, persistence, or pace, and no episodes of decompensation (Tr. 250). Despite these limitations, Dr. Pinaire opined that Plaintiff was capable of unskilled work (Tr. 256).

In an undated report, Plaintiff's therapist opined that she had largely marked to extreme limitations in mental work-related tasks (Tr. 305-08).

### 3. Expert Testimony

Dr. W. Miller testified at the hearing as a medical expert (Tr. 35-37). Dr. Miller extensively reviewed both Plaintiff's physical and mental medical records and noted that, by August 2008, Plaintiff's psychological functioning was a lot better (Tr. 36-37). Dr. Miller also testified that Plaintiff's medical records did not establish any physical impairment (Tr. 37).

Mr. T. Gusloff testified at the hearing as a vocational expert (VE) (Tr. 37-40). The VE classified Plaintiff's past work as a waitress as light, semi-skilled work (Tr. 37). The ALJ asked the VE if a hypothetical individual with Plaintiff's vocational profile could perform any jobs if the person were limited to simple, unskilled work, with no more than superficial contact with supervisors and co-workers, and no contact with the general public (Tr. 37). The VE testified that such an individual would be able to perform the jobs of hand packager (25,720 jobs in Michigan), house cleaner (23,390 jobs in Michigan) or laundry folder (6,400 jobs in Michigan) (Tr. 38-39).

### C. *Plaintiff's Claims of Error*

Plaintiff raises one argument on appeal, namely that the ALJ did not adequately accommodate Plaintiff's "moderate" difficulties in concentration, persistence or pace when he concluded that Plaintiff could do unskilled, simple work.

## III. DISCUSSION

### A. *Standard of Review*

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *See Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *See Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court

"must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla

of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *See Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

### B. *Governing Law*

The "[c]laimant bears the burden of proving her entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq*.).

Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

### C. *Analysis and Conclusions*

As noted above, Plaintiff challenges only one aspect of the ALJ's assessment of her mental condition (Plaintiff's Br. at 6-13). Plaintiff does not challenge the ALJ's evaluation of her physical impairments. As Plaintiff only challenges the ALJ's assessment of her limitations in concentration, persistence, or pace, she has waived all other arguments on judicial review. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (the plaintiff abandoned argument not raised in the district court).

A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments. *See Varley v. Sec'y of HHS*, 820 F.2d 777, 779 (6th Cir. 1987). The ALJ asked the following hypothetical questions to the VE during the hearing:

(Tr. 37)

ALJ: Okay. Say we've got a hypothetical individual with no physical limitations, but limited to simple, unskilled work, SVP-l or 2, no more than superficial contact with supervisors and co-employees. No public work. You know, no general public work.

VE: Sure.

ALJ: Any jobs? Could she return to her past work?

VE: No.

(Tr. 38)

ALJ: Any other work?

VE: Yes. Jobs such as a hand packager. It's a medium and unskilled position. In the State of Michigan, there are 25,720 hand packagers. Also, a day worker, which is a house cleaner, is a medium and unskilled position and there are 23,390 cleaner, housekeepers. And lastly, a folding machine operator is a light and unskilled position. And for laundry workers, there are 8,260     work. (sic)

ALJ: Now, say the same individual had either for a closed period or open-ended period, the person had such limitations with her anxiety, concentration and the like that she'd be unable to concentrate or to stay on task on even a simple SVP-l or 2 job for an average of 15 minutes on every hour. Would that knock her out of those jobs or any other jobs?

VE: Yes. That would.

ALJ: And say the same individual can concentrate or stay on task, but occasionally, she'd have difficulty, you know, because of nervousness in going in to work -- right, ma'am?

PLTF: Yes.

ALJ: Like, you wouldn't go in to work. You'd miss days and stuff--

PLTF: Yeah.

ALJ: Because you're so nervous. And she'd end up missing more than two days a month. Is that going to knock her out of those jobs?

-10-

    VE. Yes. That would.

The ALJ ultimately concluded that Plaintiff could work as a hand packager or a folding machine operator. Thus, the ALJ relied on the first hypothetical presented to the VE. Plaintiff argues that the use of the first hypothetical was error, since this hypothetical did not include any restrictions on Plaintiff's ability to maintain concentration, persistence or pace. Plaintiff's argument is well-taken.

  The case *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 517 (6th Cir. 2010) supports Plaintiff's argument that the hypothetical question relied upon by the ALJ failed to adequately advise the VE of her restrictions. In *Ealy*, a mental RFC assessment of the claimant was conducted by a state agency non-examining physician who "specifically limited [the claimant's] ability to sustain attention to complete simple repetitive tasks to two hour segments over an eight-hour day where speed was not critical." *Id.* at 516 (internal quotations omitted). However, the ALJ's hypothetical omitted these speed and pace-based restrictions entirely. *Id.* Because the Sixth Circuit found that the hypothetical should have included these restrictions, it held that the hypothetical questions did not fully and accurately convey the claimant's limitations to the VE. *Id.*

  The instant case is distinguishable from *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001), where the Sixth Circuit upheld an ALJ's failure to include a concentration impairment in a hypothetical to the VE. The ALJ in *Smith* found that four of five physicians were correct in assessing the claimant with minimal or negligible concentration problems, while the fifth's determination that the claimant suffered "an inability to concentrate" was not credible. Because of this finding, the ALJ did not include a concentration impairment in its hypothetical, and the hypothetical accurately portrayed the claimant's limitations.

  In the present case, the ALJ gave Plaintiff the mental limitation for "simple unskilled work" (Tr. 14). However, the ALJ also determined that "with regard to concentration, persistence or pace,

[Plaintiff] has moderate difficulties" (Tr. 13). The ALJ did not incorporate the limitation concerning Plaintiff's ability to maintain concentration, persistence and pace into the controlling hypothetical. This was error. Because the controlling hypothetical inadequately described Plaintiff's limitations, the VE's conclusion that Plaintiff could work as a hand packager or folding machine operator does not serve as substantial evidence that Plaintiff could perform this work.

### III. RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **GRANTED**, that Defendant's motion for summary judgment be **DENIED** and that the Court **REMAND** this matter with instructions to return the claim to the Commissioner for further proceedings consistent with this Report and Recommendation.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless,

by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon<br>
MARK A. RANDON<br>
UNITED STATES MAGISTRATE JUDGE

Dated: December 6, 2010

### *Certificate of Service*

*I hereby certify that a copy of the foregoing document was served on the parties of record on this date, December 6, 2010, by electronic and/or first class U.S. mail.*

<i>s/Melody R. Miles<br>
Case Manager to Magistrate Judge Mark A. Randon<br>
(313) 234-5542</i>